IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

INSURANCE COMMISSIONER OF
PUERTO RICO
Plaintiff

vs

DORAL INSURANCE AGENCY, INC.
Defendant

CIVIL 05-2230CCC

## STATEMENT OF REASONS

Pursuant to the order issued on September 27, 2006 denying the Request for Remand filed by plaintiff Insurance Commissioner of Puerto Rico (docket entry 13), the statement of reasons for said denial follows.

PROCEDURAL BACKGROUND

On November 28, 2005, defendant Doral Insurance Agency, Inc. ("DIA") filed a Notice of Removal of administrative case no. E-2003-196, Insurance Commissioner of Puerto Rico v. Doral Insurance Agency, Inc., pending before the Office of the Insurance Commissioner ("OIC"). DIA averred that any interpretation to be given by the Insurance Commissioner of Puerto Rico (the "Commissioner") and the OIC to the Puerto Rico Insurance Code ("Insurance Code" or "Code") and to Rule 74 of the Rules and Regulations of the Code ("Rule 74") that could affect its ability to do business with a person licensed by the OIC, and requiring that DIA transact all insurance business at its affiliate depository institution, were preempted by the Gramm-Leach-Bliley Act of 1999 ("GLBA"). On February 1, 2006, the Commissioner requested that the case be remanded to the OIC (docket entry 5) alleging that: (1) the Notice of Removal was untimely filed; (2) the OIC is not a state court for removal purposes; (3) the state interests at hand surpass any potential federal interest; (4) there is no complete preemption in this case; and (5) in the alternative, the Younger abstention applies. On April 20, 2006, DIA presented its opposition thereto (docket entry 10).

CIVIL 05-2230CCC                              2

## THE FACTS

DIA is a licensed insurance agent authorized by the OIC to sell insurances for life, physical disability, property, maritime transportation, farming, vehicles, guaranty and title in Puerto Rico, as a subsidiary of the financial holding company, Doral Financial Corporation, through which the depository institution, Doral Bank, Puerto Rico, would carry out the sale, solicitation, offering or marketing of insurance products.

DIA made its first insurance transactions in December 2000 and decided not to establish areas in the premises of its depository affiliates, limiting its intervention principally to the insurance required by financial institutions from its borrowers, such as policies that insure mortgaged properties. It also decided at that time that it was in its best interests to share the commissions on the sales of optional insurance with a general insurance agency and certain endeavors to place the required insurance, with a duly licensed insurance broker, authorized to write the same kinds of insurance as DIA.

On March 27, 2003, the Commissioner ordered an examination of DIA covering the period between October 9, 2000 and December 31, 2002. The purpose of the examination was to determine whether DIA's operations were conducted in accordance with the Insurance Code, its Regulations and those Circular and Normative Letters issued by the OIC. DIA's compliance with Rule 74 was specifically verified.

On April 25, 2005, the OIC presented its Examination Report ("the Report"). Two findings were that the sharing of commissions between an insurance agent and an insurance broker licensed to write the same kind of insurance did not conform to the provisions of Articles 9.010, 9.020, 9.170, 9.180 and 3.290 of the Code, 26 L.P.R.A. §§901, 902, 917 and 329, respectively; and that DIA violated Rule 74 because the sale, solicitation and marketing of insurance products, instead of being conducted through the depository institution to which DIA is affiliated, was being conducted through other entities dedicated exclusively to the business of lending money.

CIVIL 05-2230CCC					3

DIA timely requested that the Report be amended in light of the objections presented or, in the alternative, that a hearing be held to dispose of any unresolved issues.  An administrative hearing was set before an official examiner and on October 24, 2005, DIA requested its continuance stating that the GLBA preempted the interpretation given in the Report to the provisions of the Code mentioned above and to Rule 74.  On October 27, 2005 the OIC filed a motion in opposition to DIA's preemption argument and on October 28, 2005, the Official Examiner re-scheduled the hearing for December 13, 2005, without resolving the preemption issue.  This removal followed.

THE LAW

At the outset, we note that the Commissioner waived any alleged procedural defects of the removal, such as the untimely filing it alleged, by requesting remand more than thirty (30) days after the Notice of Removal was filed. 28 U.S.C. §1447(c).  See also Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 45 (1st Cir. 2003); Armistead v. C&M Transport, Inc., 49 F.3d 43, 46-47 (1st Cir. 1995).

The Commissioner also sustains that this case is not removable under 28 U.S.C. §1441 because it fails the functional test to assess the propriety of a removal of proceedings before state administrative agencies established in Volkswagen v. Puerto Rico Labor Relations Board, 454 F.2d 38, (1st Cir. 1972).  The Court rejects the Commissioner's position.  The first prong of the test requires evaluation of the functions, powers and procedures of the state administrative agency.  The Commissioner sustains that the OIC lacks traditional judicial powers, and is not the functional equivalent of a court for removal purposes because it can impose administrative penalties but not damages, does not have contempt powers, and the hearings are not inter partes.

An action brought by a Commonwealth agency may be considered a civil action brought in a state court under 28 U.S.C. §1441(a) for removal purposes where the agency proceedings are adjudicative in nature.  Volkswagen, 454 F2d at 44.  See also D.A.C.O. v. Oriental Federal

CIVIL 05-2230CCC                                          4

Savings, 648 F. Supp. 1194, 1195 (D.P.R. 1986).  The OIC holds adjudicative hearings that are conducted pursuant to Puerto Rico's Uniform Administrative Procedures Act, 3 LPRA §§2101-2201, ("UAPA") and presided by a hearing examiner.[1]  In addition, the First Circuit has held that even when the Puerto Rico Labor Relations Board lacked enforcement powers to make its resolutions effective it still "acts as a court" for removal purposes. Volkswagen, 454 F.2d at 44.  See also Floeter v. C.W. Transport, Inc., 597 F. 2d 1100, 1102 (7th Cir. 1979) ("the [agency's] need to resort to the court system for enforcement of its orders does not change the essentially judicial character of the proceedings").  Finally, the hearings held at the OIC are inter partes, which means "between or among parties."  In the proceedings before the OIC there are two opposing parties, each sustaining irreconcilable positions and both duly represented by their respective attorneys.  The Commissioner has admitted the adjudicative nature of the administrative proceedings stating that they "are litigated in the context of an adversarial process, with both parties represented by counsel, and the OIC issuing a final written decision in reliance of its own precedent and that of Commonwealth and Federal Courts."[2]  Thus, the first prong of the functional test is satisfied in this case.

The second prong of the Volkswagen functional test requires consideration of the respective state and federal interests in the subject matter and in the provision of a forum.  The interests that must be balanced in this case are: the federal interest of compliance with the GLBA and the interpretation given to Art. 9.390 (2) of the Insurance Code and Rule 74 by the Commissioner and the OIC.  A defendant has a right to have a federal question decided in a federal forum even if, in removing, he deprives a plaintiff of a procedural or remedial advantage." Oquendo v. Dorado Beach Hotel Corp., 382 F. Supp. 516, 519 (D.P.R. 1974).

---

[1] The Commissioner has admitted that the OIC's administrative proceedings are judicial in nature.  See Page 14 of the Commissioner's Request for Removal (docket entry 5).

[2] Page 14 of the Request for Remand (docket entry 5).

CIVIL 05-2230CCC                                        5

      The Commissioner sustains that potential defenses, including a federal statute's preemptive effect, does not provide a basis for removal, except when there is complete preemption; that the GLBA does not contain an express preemption provision since it contains certain safe harbors to allow states flexibility in regulating insurance sales, solicitation and cross-marketing activities; and that the provisions of the Code in controversy do not prevent or interfere with a depository institution's participation in the insurance business in Puerto Rico.

      The insurance industry implicates important state interests. Ginorio v. Gómez, 301 F.Supp.2d 122 (D.P.R. 2004). However, Ginorio does not stand for the proposition that whenever insurance issues are involved in a case said state interests are superior to federal interests established by federal law. The balancing of interests in this case requires a determination of whether the OIC and the Commissioner can prevent or significantly interfere with the federal right of banks to engage in the insurance business, that is: whether if by operation of the Supremacy Clause, U.S. Constitution, Art. 6, cl. 2, the Commissioner and the OIC's interpretation of the Puerto Rico Statute, Art. 9.390(2) of the Code, and of Rule 74 are preempted by operation of the Supremacy Clause because they conflict with the exercise of powers granted to affiliates to depository institutions under federal law. Therefore, the Court must determine whether a federal statute that permits banks to engage in the insurance business, i.e., the GLBA, preempts state statutes, i.e., the interpretation given by the OIC and the Commissioner to Art. 9.390 (2) of the Insurance Code forbidding the sharing of commissions between an agent and broker authorized to write the same kind of insurance ("the Sharing of Commissions Prohibition") and the requirement of Rule 74 regarding the separation of areas for transacting insurance business ("the Separation of Areas Restriction").

      A state claim may be removed to federal court when a federal statute wholly displaces the state-law cause of action through complete preemption and a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law, and is then removable under 28 U.S.C. §1441(b), which authorizes any claim that "arises

CIVIL 05-2230CCC                                                      6

under" federal law to be removed to federal court.  <u>Beneficial National Bank v. Anderson</u>, 539 U.S. 1, 8, 123 S. Ct. 2058, 2063 (2003).  It is well settled that preemption arises where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," or "prevent[s] or significantly interfere[s] with" the exercise of powers recognized under federal law.  <u>Barnett Bank of Marion County N.A. v. Nelson</u>, 517 U.S. 25, 33 (1996).  Accordingly, the power of affiliates to depository institutions authorized by and exercised pursuant to federal law, in this case the GLBA, preempts any interpretation of state law which stands as an obstacle to, prevents or significantly interferes with the exercise of those powers.  <u>Barnett</u>, 517 U.S. at 28.

The GLBA, which became effective in 1999, amended several federal statutes that govern financial institutions.  Among its many goals, the GLBA sought to facilitate affiliations between banks and insurance companies and to permit depository institutions and their affiliates to offer insurance products.  <u>See</u> generally, Pub. L. No. 106-102, 113 Stat. 1338, tit. I (codified in scattered sections of Titles 12 and 15 of the U.S. Code).  Because the states have historically regulated the insurance industry, <u>see e.g.</u>, the McCarran-Ferguson Act of 1945, 15 U.S.C. §1101 (recognizing this practice and declaring it to be in the public interest), the GLBA includes a number of provisions specifying whether and how much it preempts otherwise applicable state insurance laws.  <u>See</u> <u>Bowler v. Hawke</u>, 320 F.3d 59 (1st Cir. 2003).  The GLBA was enacted to aid banks and not place banks under the sole supervision of state insurance commissioners and state insurance law.

The fact that a state restriction may be intended to serve consumer protection purposes is not sufficient to avoid preemption if the restriction stands as an obstacle to or significantly interferes with the exercise of a federal right.  "However wise or needful [a state's] policy may be... it must give way to the contrary federal policy."  <u>Franklin National Bank of Franklin Square</u>

CIVIL 05-2230CCC                                    7

v. New York, 347 U.S. 373, 378-379 (1954); Wells Fargo Bank of Tex. N.A. v. James, 321 F.3d 488, 491 n.3 (5th Cir. 2003); Association of Banks in Ins., Inc. v. Duryee, 270 F.3d 397, 404 (6th Cir. 2001).

The legal standard "in defining the pre-emptive scope of statutes and regulations granting a power to national banks [is] that normally Congress would not want States to forbid, or to *impair significantly*, the exercise of a power that Congress explicitly granted." Barnett, 517 U.S. at 33 (emphasis added). Thus, the issue is whether the challenged provisions "prevent or significantly interfere" with the ability of banks to sell, solicit, or cross market insurance. As the First Circuit observed, the outcome requires courts to make judgment calls about the extent to which the laws hinder the ability of depository institutions to engage in the insurance business. See, Bowler, 320 F.3d at 64.

Of particular concern in this case is § 104(d)(2) of the GLBA, 15 U.S.C. §6701(d)(2), which addresses the extent to which the states may continue to regulate the insurance sales, solicitation, and cross-marketing activities of depository institutions and their affiliates. Section 104(d)(2)(A) of the GLBA[3] incorporates the preemption standards established in Barnett and makes those standards expressly applicable to the interpretation of state statutes affecting the sale, solicitation and cross-marketing of insurance by an affiliate of a depository institution.

Section 104(d)(2)(B) of the GLBA refines the scope of subparagraph (A)'s general preemption provision by stating that state laws regulating the sales, solicitation, and cross-

---

[3] This section states that "[i]n accordance with the legal standards for preemption set forth in the decision of the Supreme Court of the United States in Barnett Bank of Marion County N.A. v. Nelson, 517 U.S. 25 (1996), no State may, by statute, regulation, order, **interpretation**, or other action, prevent or significantly interfere with the ability of a depository institution, or an affiliate thereof, to engage directly or indirectly, either by itself or in conjunction with an affiliate or any other person, in any insurance sales, solicitation, or cross-marketing activity." (Emphasis supplied.) 15 U.S.C. §6701(d)(2)(A). The GLBA includes Puerto Rico in the definition of the term "state". See 15 U.S.C. § 6701(g)(5).

CIVIL 05-2230CCC                                      8

marketing activities of depository institutions and their affiliates are not preempted under subparagraph (A) **so long as they "are substantially the same as but no more burdensome or restrictive than" thirteen statutory categories described therein**. See Bowler v. Hawke, supra.  The GLBA further provides that "[n]othing in this paragraph shall be construed . . . to limit the applicability of the decision of the Supreme Court in Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25 (1996), with respect to any State statute, regulation, order, **interpretation**, or other action that is not [included among the safe harbors]." (Emphasis supplied.) See section 104(d)(2)(C)(iii), 15 U.S.C. §6701(d)(2)(C)(iii) and Bowler v. Hawke, supra.

The Sharing of Commissions Prohibition

Except as provided in any restrictions described in Section 104(d)(2)(B) of the GLBA, no State may by statute, regulation, order, **interpretation**, or other action, regulate the insurance activities authorized or permitted under the GLBA or any other provision of Federal law of a depository institution, or affiliated thereof, to the extent that such statute, regulation, order, interpretation, or other action, conflicts with the intent of the GLBA generally to permit affiliations that are authorized or permitted by Federal law between depository institutions, or affiliates thereof, and persons engaged in the business of insurance.  See 15 U.S.C. §6701(e)(4).  Pursuant to one of the preemption safe harbors of the GLBA, the States may not impose restrictions prohibiting the payment or receipt of any commission or brokerage fee or other valuable consideration for services as an insurance agent or broker to or by any person, if such person holds a valid State license regarding the applicable class of insurance at the time at which the services are performed.  See 15 U.S.C. §6701(d)(2)(B)(iv).

The GLBA requires that a majority of the States enact uniform laws and regulations governing the licensure of individuals and entities authorized to sell and solicit the purchase of insurance within the State, or enact reciprocity laws and regulations governing the licensure of nonresident individuals and entities authorized to sell and solicit insurance within those States.

CIVIL 05-2230CCC                                      9

See Sec. 321 of the GLBA, 15 U.S.C. §6751(a). This was accomplished in Puerto Rico with the enactment of Act No. 10 of January 19, 2006 ("Act 10").

Here, it appears that the Commissioner and the OIC have interpreted Article 10 of Rule 74 and Article 9.390 (2)(a) of the Insurance Code as meaning that a resident agent can share commissions with another agent and a broker with another broker, while sustaining that there is a conflict of interest in the sharing of commissions between an agent and a broker since pursuant to the definition of the term "agent" in the Insurance Code, the agent represents the insurer and pursuant to the definition of the term "broker," the broker represents the interests of the insured. However, the only limitation imposed by the GLBA to the sharing of commissions by or with a depository institution is that the insurance agent and the broker hold a valid state license regarding the applicable class of insurance at the time at which the services are performed. Thus, the GLBA completely preempts the interpretation given by the Commissioner and the OIC to Art. 9.390(2) of the Insurance Code and to Article 10, Sections 1(a) and (b) and 3(f), of Rule 74, because it stands as an obstacle to the accomplishment and execution of the full purposes of Congress in enacting the GLBA and significantly interferes with DIA's ability to sell, solicit or cross-market insurance, powers recognized under federal law.

**The Separation Restriction**

Article 27.131 (14) of the Insurance Code provides that:

> The Insurance Commissioner shall adopt the rules and regulations deemed reasonable to govern the methods, actions or practices employed in the sale of insurance by financial institutions or their affiliates, as well as the rules deemed reasonable to protect insurance customers and their personal information pursuant to the Gramm-Leach-Bliley Act and the applicable provisions of this Code. Without it being understood as a limitation, the Insurance Commissioner shall adopt rules and regulations concerning the following matters:
> ...
> (14) **To require that soliciting or the sale of insurance <u>at a depository institution</u>** be conducted in an area physically segregated from the area where loans or extensions of credit are processed, and to require that if the employee who handled the processing of the loan or extension of credit refers the customer to any other persons duly licensed to solicit or sell insurance, said employee may do so only after the loan or the extension of credit has been approved. (Emphasis supplied).

CIVIL 05-2230CCC                                          10

This Separation Restriction is implemented by Article 5, §1(a) of Rule 74.[4]

Similar separation restrictions have been found to be preempted by the GLBA in several cases. See Massachusetts Bankers Association v. Bowler, 392 F. Supp. 2d 24 (D. Mass. 2005); Cline v. Hawke, 51 Fed. Appx. 392, 2002 WL 31557392 (4th Cir. November 19, 2000), decisions that are adopted by this Court. Thus, the Separation Restriction is also preempted by the GLBA because it too stands as an obstacle to, prevents or significantly interferes with DIA's ability to engage in insurance sales, solicitation, or cross marketing.

**Abstention under Younger**

Finally, the Commissioner alleges that abstention is warranted under Younger v. Harris, 401 U.S. 37 (1971). Abstention is the exception, not the rule. See NOPSI v. Council of New Orleans, 491 U.S. 350, 359 (1989); Fragoso v. López, 991 F.2d 878, 882 (1st Cir. 1993).

In Younger and its companion cases, the Court relied on "the fundamental policy against federal interference with state criminal prosecutions." 401 U.S. at 46. It said nothing about civil proceedings. However, the Supreme Court has extended the Younger abstention doctrine to certain types of state civil actions. See NOPSI, 491 U.S. at 367-368. The First Circuit and this Court, however, have refused to apply abstention doctrines when "the operation of federal

---

[4] Article 5, §1(a), of Rule 74, provides as follows:

**SECTION 1 – SEPARATION AND IDENTIFICATION OF AREAS**
The subsidiary corporation **may** sell, solicit, offer or market insurance products or annuities within the premises of the depository institution or its affiliates, **provided that** said activities are conducted in an area that is physically separated from the area in which deposit-taking activities take place. Said area must be clearly distinguishable from the area in which credit extensions are negotiated. The area destined for the sale, solicitation, offer or marketing of insurance products or annuities must be accessible and clearly identified. The subsidiary corporation must display signs in the area within the premises of the depository institution destined for insurance activities. The signs must provide the public with notice about the availability of insurance or annuity products. Said signs will identify the area destined for insurance transactions and must display the name of the subsidiary corporation, as it appears in its license, in a prominent, simple, direct and easily understandable manner, in compliance with the provisions of Article 9.351 of the Code. (Emphasis supplied.)

CIVIL 05-2230CCC                                11

preemption is clear." See Chaulk Services, Inc. v. Massachusetts Commission Against Discrimination, 70 F.3d 1361, 1369 (1st Cir. 1995); UPS v. Flores-Galarza, 275 F. Supp. 2d 155, 159 (D.P.R. 2003). We are before such a case here. The Court's concern in this case is to carry out the federal statutory scheme pertaining to banks engaging in the insurance business under the GLBA. Chaulk Services, Inc., supra. Thus, Younger abstention is unwarranted in this case.

For the reasons stated above, plaintiff's Request for Remand (docket entry 5) was denied on September 27, 2006 (docket entry 13).

SO ORDERED.

At San Juan, Puerto Rico, on October 31, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge